## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DARRICK LAWRENCE,

    Defendant.

CRIMINAL CASE NO.

1:17-CR-00112-SCJ-JFK-1

## **REPORT AND RECOMMENDATION**

  Pending before the court are Defendant Darrick Lawrence's motions [Docs. 21, 27 and 28][1] and supplemental brief [Doc. 30] to suppress evidence obtained as the result of the execution of a state search warrant [Doc. 31-1 ("Search Warrant" and "Affidavit")] for his residence located at 3803 Waldrop Hills Drive, Decatur, Georgia. The Government opposes the motion to suppress. [Doc. 31]. In support of the motion to suppress the state search warrant for his residence, Defendant contends that (1) he

---

[1]In each motion, Defendant also seeks suppression of any statements that he made at the time of execution of the search warrant, before he was advised of his Miranda rights, and any statements made after being advised of his rights. [Docs. 21, 27 and 38]. Defendant apparently only made a post-Miranda waiver statement; that statement was recorded and turned over in discovery. Counsel for Defendant advised the court that he is not challenging the admission of any statements. Accordingly, to the extent the motions seek suppression of statements, they should be **DENIED** as **MOOT**.

is entitled to a <u>Franks</u> hearing[2] because the affiant for the search warrant deliberately or with reckless disregard for the truth included misleading information in the affidavit and (2) omitted material information from the affidavit and (3) that probable cause is lacking for the warrant.  [Docs. 28 and 30].  The Government opposes the motion to suppress contending that Defendant has not made a sufficient showing to entitle him to a <u>Franks</u> hearing and that the affidavit provides probable cause for the search.  [Doc. 31].  After consideration of the arguments of the parties, the search warrant and affidavit and binding and persuasive legal authority, the court recommends that Defendant's motions to suppress be denied.

## I.      State Search Warrant & Affidavit

On February 7, 2017, D.M. Mcbride, a DeKalb County Police Detective ("Affiant"), presented a search warrant for 3803 Waldrop Hills Drive, Decatur, Georgia ("Target Residence"), to search for evidence of murder, including "documents related to flights or bus trips including but not limited to receipts, flight information, boarding passes, luggage tickets, and any evidence used to make reservations" and "item[s] used to ignite flame or residue from burning" and for evidence of violations

---

[2]<u>See</u> <u>Franks v. Delaware</u>, 98 S. Ct. 2674 (1978).

2

of the state drug laws. [Search Warrant]. In support of the warrant, Affiant presented an affidavit providing the following information.

On January 18, 2017, Detective ("Det.") Rosser, County of Henrico Division of Police, located in Virginia, began investigating a recent homicide at a residence in that county. At the residence, Det. Rosser observed Lamont Baldwin, the deceased, who had been shot multiple times, near the front door. Ten .40 caliber shell casings were found near the body. [Affidavit]. Approximately fifteen to twenty feet from the body, Det. Rosser found a black LG cell phone, which he seized. [Id.]. The detective then spoke to the deceased's wife, Lena, and daughter, Ty'lia, who advised him what had happened. Ty'lia stated that she answered the door and found a black female, identifying herself as Keisha, who asked for her father by name. Her father exited to speak with Keisha, and Ty'lia heard multiple gunshots. Lena advised that after her husband exited the residence, she heard gunshots and called 911. [Id.].

The Affiant then recounted that Det. Rosser obtained a report of data from the cell phone and observed that nearly all phone numbers he saw came from Atlanta. Affiant next states, "Your affiant also observed a photo of a male subject, heavily tattooed, holding a large sum of cash. A gun was also visible in his right pocket. The photo was time stamped as having been taken on January 17th, 2017." [Id.]. Affiant

3

continues by advising that, on January 19, 2017, Det. Rosser contacted Det. Benton, Atlanta Police Department, and gave him a list of phone numbers from the cell phone to help identify the owner and the subject in the photo.  Det. Benton advised that a recent call on the phone matched a person in "their database known as Santonio Brown" and that he subsequently identified the person in the photo as Antonio Johnson, an associate of Brown.  [Id.].

Affiant next related that on January 20, 2017, Det. Rosser called the only 804 area code in the cell phone which was for a pizza delivery service for the Best Western Hotel, Henrico, Virginia.  Det. Seay determined that the delivery, associated with the call in the cell phone, was made to the Best Western, located at 7007 West Broad Street, room 412.  Dets. Rosser and Hoey traveled to the location and spoke with employees who identified Johnson as checking in on January 16, 2017, and had observed him with Brown.  Affiant then stated, "Your affiant entered room 412, which was then unoccupied, and noticed that the picture of the subject on the phone with the gun and money appeared to have been photographed within this hotel room."  [Id.]. Det. Rosser spoke to officer Fanny Canales, probation and parole, and was informed that Johnson's trip to Virginia, if unauthorized, would be a violation of his parole. [Id.].

AO 72A
(Rev.8/82)

On January 25, 2017, Dets. Rosser and Seay traveled to Atlanta to attempt to speak to Johnson, who had been arrested for violation of his parole.  After being advised of his Miranda rights by Det. Rosser, Johnson advised that he was paid to kill Baldwin by Darrick Lawrence - identifying him from a photograph - and that Lawrence gave him the gun, $4,000 in cash and a photograph of Baldwin.  Lawrence also paid for Johnson and Brown to travel to Virginia.  [Id.].  Johnson advised that Brown transported cocaine to Virginia for Lawrence and that he, Johnson, routinely traveled to Richmond to collect money for Lawrence.  Johnson said that on January 18, 2017, Lawrence stated that he wanted Baldwin killed that day.  [Id.].

Johnson advised Det. Seay that he traveled to Baldwin's house with two males and a female he did not know, that the female knocked on the door, and that he "'unloaded' the gun on the victim."  The weapon he used to murder Baldwin was the one pictured in the photograph.  Johnson said, after the murder, that he was dropped off at the "China Bus" station and returned to Atlanta.  [Id.].  He stated that he then went to Lawrence's home and that "the gun was burned . . . the residence."  [Id.].

While Det. Seay interviewed Johnson, Det. Rosser interviewed Shawnta Evans, Johnson's girlfriend, who advised that on January 25, 2017, Johnson advised her that he killed a man at the request of a man she knew as "Bra."  She has seen "Bra" on

5

three occasions, including within the last two weeks at his residence.  She positively identified a photograph of Lawrence as "Bra" and the Target Residence as Bra's residence where she recently had taken Johnson.  [Id.].

On January 28, 2017, Det. Rosser received reservation information from Megabus indicating that Danielle Anderson, whom the detective knew to be Lawrence's girlfriend, made the reservations for Johnson and Brown to travel to Richmond.  On November 23, 2016, Lawrence was arrested in Henrico, Virginia, at the Richmond airport, and found in possession of a single round of ammunition and $34,000 in cash, which were seized.  A DEA Task Force officer advised Det. Rosser that Anderson tried to collect the seized cash.  [Id.].

On January 29, 2017, Evans contacted Det. Rosser and advised that Brown had contacted her on multiple occasions since Johnson's arrest and wanted to meet to give her $1,800 in cash but that Evans was fearful for her safety.  Evans also stated that "Brown intimated that the money to be paid to her was from Mr. Lawrence."  [Id.].

In conclusion, Affiant stated that "[b]ased on the aforementioned facts, Detective Rosser strongly believes that evidence related [to] the murder of Mr. Baldwin will be located within the known residence of Darrick Lawrence."  [Id.].

On March 21, 2017, Defendant was charged in a federal indictment alleging violation of 21 U.S.C. § 841, possessing with intent to distribute cocaine, and 18 U.S.C. § 922(g), being a convicted felon in possession of firearms and ammunition. [Doc. 12]. These charges are based on drugs and firearms and ammunition seized from Defendant's residence following execution of the search warrant. [Doc. 31 at 1].

Additional facts will be set forth as necessary during discussion of the motion to suppress.

## II. Discussion

### a. <u>Franks</u> and Probable Cause

Defendant contends that due to the inclusion of materially false information in and the omission of material information from the affidavit for the state search warrant, he is entitled to a <u>Franks</u> hearing. [Docs. 28 and 30]. Defendant contends that Det. Mcbride included two false statements in the affidavit when he stated that "Your affiant" observed the photograph of the male subject in the cell phone seized from the vicinity of the murder victim and when he stated that "Your affiant" entered the hotel room in Henrico, Virginia, and observed that the aforementioned photograph appeared to have been taken there. In support of his claims, Defendant's counsel provided an affidavit in which he stated that Det. Mcbride advised that he did not conduct any

investigation, interview anyone, travel to Virginia or examine any photographs. [Doc. 28, Kenner Affidavit ("Aff.") ¶ 3]. Defendant also contends that Det. Mcbride omitted material information from the affidavit concerning Johnson, including, Johnson's prior conviction for robbery and prison mutiny, that Johnson was undergoing a mental evaluation and that Johnson had recanted his statements and advised Virginia officers that he had mental issues. In support, Defendant's counsel's affidavit advises that he obtained prior criminal history information on Johnson from the Georgia Pardons and Parole database and that the Henrico County prosecutor on May 19, 2017, advised that Johnson "was undergoing a mental evaluation." Counsel stated that Defendant informed him about the alleged recanting by Johnson and that Johnson advised officers of his mental issues but that the information had not been corroborated. [Id. ¶ 4]. Additionally, Defendant argues that the affidavit fails to establish probable cause because Det. Mcbride did not identify the source of the information set forth in the affidavit to allow the issuing judge to determine the reliability of the information. [Docs. 28 and 30].

In Franks, 98 S. Ct. 2674, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant

8

affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search.  Franks, 98 S. Ct. at 2684-85; see also United States v. Sarras, 575 F.3d 1191, 1218 (11th Cir. 2009).  "[T]o prevail in a Franks challenge one must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in 'reckless disregard for the truth,' and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant."  O'Ferrell v. United States, 253 F.3d 1257, 1267 (11th Cir. 2001) (citation omitted).

And Franks is applicable to information omitted from an affidavit for a search warrant.  "[A] warrant affidavit violates the Fourth Amendment when it contains omissions 'made intentionally or with a reckless disregard for the accuracy of the affidavit.'"  Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (citation omitted).  "A party need not show by direct evidence that the affiant makes an omission recklessly.  Rather, it 'is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself.'"  Id. at 1327 (citation omitted); accord

United States v. Owden, 345 Fed. Appx. 448, 454 (11th Cir. 2009) (same). "Omissions that are not reckless, but are instead negligent . . . or insignificant and immaterial, will not invalidate a warrant. . . .   Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale, 117 F.3d at 1327; accord United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) ("The defendant bears the burden of showing that, 'absent those misrepresentations or omissions, probable cause would have been lacking.'") (citation omitted).  No Franks hearing is required, if, when the omitted information is added to the affidavit, the affidavit's content still establishes probable cause for the search. Kapordelis, 569 F.3d at 1309; Owden, 345 Fed. Appx. at 454 (if the challenge is based on information omitted from the affidavit, then the showing must be that the "'omission was essential to the finding of probable cause'") (quoting United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir. 2006)).

Accordingly, to mandate a Franks evidentiary hearing,

the [defendant's] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements

10

of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Franks, 98 S. Ct. at 2684-85. The court, when applying this standard to Defendant's request for a Franks hearing, finds that Defendant has not made a substantial preliminary showing that material misrepresentations were intentionally and/or recklessly included in the affidavit or that material information was intentionally and/or recklessly omitted from the affidavit or, alternatively, a showing that such alleged misrepresentations or omissions undermined the probable cause otherwise set forth in the affidavit as necessary for a Franks hearing to be held.

The court agrees with the Government's characterization as "proofing errors" the two allegedly false statements in the affidavit made by Det. Mcbride, that is, that "Your affiant" observed the photograph of Johnson in Johnson's cell phone and that "Your affiant" was in the hotel room in Virginia and made the observations about where the photograph had been taken. [Doc. 31 at 15-16]. The affidavit for the search

11

warrant is to be evaluated based on the totality of the information set forth therein.  <u>See</u> <u>United States v. Jiminez</u>, 224 F.3d 1243, 1248 (11th Cir. 2000).  And affidavits are not to be judged in "a hypertechnical manner; rather, a realistic and commonsense approach should be employed . . . ."  <u>United States v. Miller</u>, 24 F.3d 1357, 1361 (11th Cir. 1994).  A common sense reading of the affidavit evidences that Det. Mcbride was recounting in the affidavit information provided to him by Henrico, Virginia, detectives who were conducting the murder-for-hire investigation.  In fact, the affidavit recounts that Det. Rosser seized the cell phone and conducted the data search on the cell phone.  In the sentence preceding the first "Your affiant" statement challenged by Defendant, Det. Mcbride recounts Det. Rosser's observations of the numbers found in the cell phone making it reasonable to conclude that Det. Rosser, not Det. Mcbride, also observed the photograph in the cell phone.  Likewise, in the paragraph containing the second challenged "Your affiant" statement, Det. Mcbride recounts the investigation in Virginia by Dets. Rosser and Seay leading Dets. Rosser and Hoey to the Best Western hotel where they interviewed employees and learned that Johnson and Brown had been in residence during the time of the murder.  The only reasonable conclusion is that Dets. Rosser and Hoey, at that time, also entered room 412 and made the observations about the photograph recounted in the affidavit.  [Affidavit].

12

Defendant's offer of proof may establish that Det. Mcbride's error was negligent, but he has not presented sufficient proof that the error was intentional, much less reckless, or material to the probable cause determination. Defendant does not contend that the observations of the photograph were not made at all or are false; he simply challenges who made the observations. If the affidavit is corrected to identify the Henrico County detectives as making the observations, just as the affidavit does for the rest of the investigation, probable cause is not impacted.[3]

Defendant also contends that there are material omissions regarding Antonio Johnson's criminal history, mental status and allegedly recanting his statement. Defendant's proof that Johnson recanted and advised Virginia officers, at the time of his interview, that he had mental issues is based on an unsubstantiated claim made by Defendant - a claim that provides no information concerning how Defendant is supposedly aware of this information or who told him this information. [Kenner Aff. ¶ 4]. The offer of proof is insufficient because it is conclusory - simply setting forth the claim in an affidavit made by a third party not privy to the information and based on hearsay does not carry Defendant's burden. And the information that Johnson, *in*

---

[3]In fact, the court agrees with the Government that deleting both statements entirely from the affidavit does not impact a finding of probable cause. [Doc. 31 at 17-18].

13

*May 2017*, was undergoing a mental evaluation, even if true, does not support a finding

that any officer, *in February 2017*, when the affidavit was prepared, was aware of any

mental deficiencies suffered by Johnson that should have been included in the

affidavit.   Further, Defendant's evidence that Johnson had felony convictions for

robbery and prison mutiny, if included in the affidavit, would not have impacted the

judge's evaluation of Johnson's reliability.   As the Government points out, the judge

knew that Johnson was involved in drug trafficking, had murdered a man for $4,000,

and was on parole obviously for having committed some crime.[4]   [Affidavit].   Adding

---

[4]To the extent that Defendant's arguments can be read to generally challenge whether the affidavit provided sufficient information for the judge to evaluate Johnson's reliability, see United States v. Johnson, 444 Fed. Appx. 424, 425 (11th Cir. 2011) ("If an informant is mentioned in the affidavit, the affidavit must demonstrate the informant's 'veracity' and 'basis of knowledge.'") (citation omitted), the court finds that sufficient information is set forth.  Johnson, at peril to himself, admitted to engaging in criminal conduct and gave a detailed, first hand account of that conduct in which he was a participant.  See United States v. Mitchell, 366 Fed. Appx. 6, 14 (11th Cir. 2010); United States v. Deering, 296 Fed. Appx. 894, 899 (11th Cir. 2008); United States v. Barfield, 507 F.2d 53, 58 (5th Cir. 1975); United States v. Villaverde-Leyva, 2010 WL 5579825, at *7 (N.D. Ga. December 9, 2010), report and recommendation adopted by 2011 WL 121932 (N.D. Ga. January 14, 2011). Additionally, the detectives corroborated much of Johnson's information by establishing that Johnson was at the scene of the murder - including that his account matched that of the victim's family, was in Henrico County with Brown, knew Defendant (as substantiated by Evans) and that Defendant's girlfriend secured the reservations for Johnson and Brown to travel to Virginia.  See Johnson, 444 Fed. Appx. at 425; United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995).

the nature of Johnson's prior conviction would not substantially impact the issuing judge's evaluation of his reliability.

The primary failing in Defendant's offer of proof regarding Johnson is that he presents nothing to demonstrate that the affiant on the affidavit, Det. Mcbride, had any knowledge of or was personally aware of this information.  See United States v. Flowers, 531 Fed. Appx. 975, 980-81 (11th Cir. 2013) (defendant's allegation that "omitted facts were known to the police at the time the affidavit was sworn to" fails to establish "that the affiant had the requisite intent" because he "provided no evidence that established [the affiant] either intentionally or recklessly omitted these facts"); United States v. Angulo-Hurtado, 165 F. Supp. 2d 1363, 1374 (N.D. Ga. 2001) ("It is Defendants' burden at this juncture to make some affirmative showing *both* that the statement [in the affidavit] was false . . . *and* that affiant had some basis for knowing that it was false.") (emphasis added).  At best, Defendant's offer of proof indicates that the Henrico County detectives may have been aware of additional information about Johnson's background.

However, as noted, Defendant must present sufficient proof that Det. Mcbride "'made [omissions] intentionally or with a reckless disregard for the accuracy of the affidavit.'"  Madiwale, 117 F.3d at 1326-27.  In Gatling v. Roland, 2011 WL 2711226

15

(M.D. Ga. July 13, 2011), the plaintiff presented sufficient proof that the affidavit in support of a warrant to obtain his bodily fluids contained false information. The court stated that "the only remaining question [was] whether Plaintiff identified sufficient evidence suggesting that [the affiant] *knew* the facts alleged in the affidavit were false." Id., at *11 (emphasis in original). The court held, "He has not" because the facts established that the affiant arrived on the scene after the plaintiff was arrested and that he relied on information provided by investigating officers concerning events occurring before he arrived to prepare the affidavit for the search warrant. Id. There was no dispute that the affiant relied on information provided by investigating officers and did not have personal knowledge of the events and so informed the issuing judge. The court concluded, "The statements were thus 'truthful' to the extent that [the affiant] 'believed or appropriately accepted' them as true." Id., at *12 (citation omitted). Likewise in this case, as will be discussed further *infra*, there is no dispute that Det. Mcbride relied on information provided to him by the detectives conducing the murder-for-hire investigation and was not personally involved in that part of the investigation and that the affidavit's content established the source of the information for consideration by the issuing judge. These facts, however, do not establish that Det. Mcbride knew that any material information was omitted from the affidavit. Id. (citing

16

Sosa v. Hames, 581 F. Supp. 2d 1254, 1270 (S.D. Fla. 2008) ("finding that [the] officer 'was entitled [to] rely upon statements made to him by another officer in drafting the [a]ffidavit, even if it is ultimately discovered that [the other officer] misstated the evidence'")).

And Defendant has failed to articulate a basis for calling into question Det. Mcbride's reasonable reliance on the information provided to him by other sworn law enforcement officers or to establish that he was at least reckless to omit information about Johnson from the affidavit.  See, e.g., Zargari v. United States, 658 Fed. Appx. 501, 506-07 (11th Cir. 2016) (rejecting the defendant's challenge to probable cause in the arrest warrant based on alleged false statements included by the affiant, the court noted that the affiant pointed out in the affidavit that another officer had witnessed the events recounted and challenged by the defendant and stated that "[e]ven if [that officer] knew these events did not take place, his lies cannot support an inference that [the affiant] had any reason to believe that [the officer] was untrustworthy absent plausible factual allegations to that effect") (citing Franks, 98 S. Ct. at 2681); United States v. Rivera, 524 Fed. Appx. 821, 826 (3rd Cir. 2013) (rejecting the defendant's unsubstantiated contentions in seeking Franks hearing that the affiant should have questioned the veracity of the informant's information because the defendant "offered

17

no evidence that the detective who provided the affidavit either knew that the information [from the informant] was not true or recklessly disregarded its falsity"); United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000) ("'[T]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a Franks violation. A Franks violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth.'") (citation omitted). Defendant has not made a showing to entitle him to a Franks hearing.

And the facts set forth in the affidavit support the issuing judge's finding of probable cause. The issuing magistrate judge, in deciding whether to sign a search warrant, is "'simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jiminez, 224 F.3d at 1248 (quoting Illinois v. Gates, 103 S. Ct. 2317, 2332 (1983)) (internal quotation marks omitted). In this regard, "'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]'" United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (quoting Gates, 103 S. Ct. at 2329).

18

For this reason, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Miller, 24 F.3d at 1361 (citing Gates, 103 S. Ct. at 2331-32; United States v. Ventresca, 85 S. Ct. 741, 746 (1965)); accord United States v. Hatcher, 300 Fed. Appx. 659, 663 (11th Cir. 2008) (same). In reviewing the issuance of the federal search warrant, the undersigned must determine only that the issuing judge had a "substantial basis" for concluding that probable cause existed to uphold the warrant. See Gates, 103 S. Ct. at 2331; see also Massachusetts v. Upton, 104 S. Ct. 2085, 2085 (1984) (per curiam). The validity of the warrant is considered based on the totality of the circumstances. See Brundidge, 170 F.3d at 1352.

Defendant's attack on probable cause is based on his contention that the affiant did not identify the source of the information he presented in the affidavit and that, apparently because Det. Mcbride only assisted with obtaining the search warrant, he could not rely on the information provided by the Henrico County detectives who investigated the murder-for-hire. [Docs. 28 and 30]. Defendant's arguments are merit less.

19

Defendant does not dispute that Det. Mcbride obtained the information set forth in the affidavit from the Henrico County detectives who personally conducted the investigation.  As the Government points out, the affidavit attributes each fact set forth to the investigation performed by Dets. Rosser, Hoey and Seay and identifies what actions they performed and from whom they obtained information in furtherance of the investigation. [Affidavit].  Excepting the two misstatements noted *supra*, Det. Mcbride does not assert that he personally conducted any investigation.  Anyone applying a common sense reading to the entirety of the affidavit would have no doubt as to the source of the information recounted and, accordingly, be able to judge the reliability of that information.  See United States v. Sanders, 2016 WL 6471046, at *2 (N.D. Fla. October 31, 2016) ("The issuing judge is permitted to draw reasonable inferences using common sense . . ., mindful that probable cause is a 'fluid concept' . . . ."); United States v. Lebowitz, 647 F. Supp. 2d 1336, 1352 (N.D. Ga. 2009) (noting that a magistrate judge may draw reasonable inferences in determining probable cause and that "the affidavit is given a 'common sense and realistic' interpretation") (citation omitted).

In United States v. Piquet, 372 Fed. Appx. 42 (11th Cir. 2010), the Eleventh Circuit Court of Appeals addressed a defendant's contention that the facts set forth in

20

the search warrant affidavit "lacked specific attribution and failed to establish probable cause." Id. at 48.  Rejecting the defendant's argument, the court noted, "Although '[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis' for a search warrant, the agent must make clear to the magistrate judge that he is relying on other officers." Id. at 47 (quoting United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986)).  The court then explained, "This requirement is satisfied where 'the affidavit recites at the outset, or . . . *it is clear from reading the affidavit as a whole*, that it is based in part upon information obtained from other law enforcement officers.'" Id. (quoting Kirk, 781 F.2d at 1505) (emphasis added).  In the case before the court, as noted, it is evident from reading the entirety of the affidavit that Det. Mcbride was recounting information provided to him by the Virginia detectives which they obtained from their investigation.  [Affidavit].

And, contrary to Defendant's argument, the fact that Det. Mcbride did not participate in the investigation until the search warrant was sought does not somehow undermine the reliability of the information presented to the issuing judge.  Defendant argues for a much more narrow view of "common investigation" and "collective knowledge" than accepted by the Eleventh Circuit Court of Appeals.

21

In <u>United States v. Campbell</u>, 193 Fed. Appx. 921 (11th Cir. 2006), the defendant contended that the veracity of the information in the affidavit was doubtful, in part, because the affiant to the search warrant "did not observe any of the facts [set forth in the affidavit] first hand" but, instead, "based the affidavit on the statements of [two investigating officers]." <u>Id.</u> at 924-25. In <u>Campbell</u>, an undercover detective in Gainesville, Florida, engaged in instant messaging text chats with the defendant regarding sexual encounters with minors. <u>Id.</u> at 922. The detective relayed that information to a sheriff's office detective located in St. Lucie County, who also engaged in chats with the defendant regarding engaging in sexual encounters with minors. <u>Id.</u> at 922-23. Thereafter, a detective with the Martin County Sheriff's Office applied for a state search warrant relying on an affidavit including "a detailed summary of the conversations between [the other detectives] and [the defendant]." <u>Id.</u> at 923. Finding that the defendant's challenge to the search warrant failed, the court noted that information provided by fellow officers engaged in a common investigation "'are plainly a reliable source for a warrant applied for by one of their number.'" <u>Id.</u> at 925 (quoting <u>Kirk,</u> 781 F.2d at 1505). The court also noted that the defendant "cite[d] to no case law that requires a police officer to verify independently facts related to him by other police officers before including the facts in an affidavit in support of a

22

warrant." Id.  The same type of "common investigation" was undertaken in this case. Det. Mcbride was not required to have engaged in the underlying murder-for-hire investigation in order to participate in the part of the investigation involving obtaining a search warrant - relying on the facts developed during the investigation - for Defendant Lawrence's residence.  And see Gatling, 2011 WL 2711226, at **11-12 (finding no fault with the affiant's reliance on facts relayed to him by investigating officers, although the affiant had no personal involvement in the investigation or personal knowledge of the events recounted in the affidavit) (citing Kirk, 781 F.2d at 1505, and United States v. Reed, 700 F.2d 638, 641-42 (11th Cir. 1983) ("statements by law enforcement officials based . . . upon the observation of fellow officials participating in the same investigation are entitled to a presumption of reliability")). Det. Mcbride was a part of the common investigation and was entitled to rely upon the collective knowledge of the other detectives involved in order to assist them in obtaining the search warrant for Defendant's residence.

Based on the information set forth in the affidavit, the issuing judge properly determined that there was a fair probability that contraband or evidence of the murder-for-hire and/or of drug trafficking would be found in the Target Location.  Jiminez, 224 F.3d at 1248.

23

**b.     Good Faith**

Finally, as the Government correctly argues, even if the affidavit for the state search warrant did not establish probable cause, the evidence seized from Defendant's residence should not be suppressed because the good faith exception to the exclusionary rule applies in this case.  [Doc. 31 at 22-25].  In United States v. Leon, 104 S. Ct. 3405 (1984), and Massachusetts v. Sheppard, 104 S. Ct. 3424 (1984), the Supreme Court established a good faith exception to the exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective.  In United States v. Accardo, 749 F.2d 1477 (11th Cir. 1985), the Eleventh Circuit Court of Appeals discussed the good faith exception established by the Supreme Court.  With the exception of cases "where the issuing magistrate wholly abandoned his judicial role[,]" or where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]'" or where "a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid[,]" the good faith exception applies. Id. at 1480 & n.4 (citations omitted).  The good faith exception "require[s] suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not

24

have harbored an objectively reasonable belief in the existence of probable cause.'"

Id. at 1480 (quoting Leon, 104 S. Ct. at 3422).  In making this decision, the totality of

the circumstances surrounding issuance of the search warrant may be considered.  Id.

at 1481.

The court has already determined that Defendant failed to present sufficient

evidence to make a preliminary showing that Det. Mcbride either deliberately or with

a reckless disregard for the truth included false, material information in the affidavit

or omitted material information from the affidavit.  And the search warrant for

Defendant's residence was not "based on an affidavit 'so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable[.]'"  Leon, 104

S. Ct. at 3421 (citation omitted).  The court notes that the affidavit supporting the

search warrant was not a "'bare-bone' statement of nothing more than conclusory

allegations" which the Supreme Court in Leon found indicative of warrants falling

within the third exception to the good faith doctrine.  See United States v. Glinton, 154

F.3d 1245, 1257 (11th Cir. 1998).  The affidavit included details about the murder-for-

hire investigation, including, stating the actions taken by the investigating detectives,

recounting interviews with witnesses and a participant in the crime, and providing a

nexus between Defendant, his residence and the crime.  [Affidavit].  This affidavit

25

presented much more than conclusory, "bare-bone" assertions for consideration by the issuing judge.  The affidavit provided factual details for the issuing judge to consider and evaluate.  The law enforcement officers were, therefore, entitled to rely upon that evaluation and determination that "given all the circumstances set forth in the affidavit before [the judge], there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." <u>Gates</u>, 103 S. Ct. at 2332.

## III.    Conclusion

For these reasons, the court **RECOMMENDS** that Defendant's motions [Docs. 21, 27 and 28] to suppress evidence seized during the execution of the search warrant for his residence be **DENIED** and that his motions [Docs. 21, 27 and 28] to suppress his statements be **DENIED** as **MOOT**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

AO 72A
(Rev.8/82)

**SO ORDERED AND RECOMMENDED** this 24th day of July, 2017.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

27